## CONVICTION OF A COMMON PLEAS JUDGE OF AIDING AND ABETTING AN EMBEZZLEMENT.

Common Pleas Court of Medina County.

STATE OF OHIO v. ROBERT M. CAMPBELL.

Decided, March 31, 1911.

*Evidence—Declarations of a Party May Be Received in a Civil Case, When—But Have Never Been Held Admissible in a Criminal Case —Circumstances Requiring the Exclusion of Such Testimony.*

1. Verbal declarations are received in evidence in an action between third parties when accompanied by the following prerequisites: (*a*) The declarant must be dead;. (*b*) The declaration must have been against the pecuniary interest of the declarant at the time it was made; (*c*) The declaration must be of a fact in relation to a matter concerning which the declarant was immediately and personally cognizable; (*d*) The court should be satisfied that the declarant had no probable motive to falsify the fact declared.

2. It is not sufficient that in one or more points of view a declaration may be against interest; if it appears, upon the whole, that the interest of the declarant would rather be promoted than impaired by the declaration, such declaration is not admissible.

3. This species of evidence stands on the extreme limit of competent testimony, and is not highly favored by the courts, and the tendency is rather to restrict than enlarge the right to receive it; and unless such evidence comes clearly within all the conditions requisite for its reception under the rule, the better authority requires the rejection of such evidence.

4. The application of the rule to criminal cases has not been established in any reported cases in the United States.

5. Where the defendant is on trial for aiding and abetting the principal, who is a guardian of an old man, in embezzling the funds of the ward, in the control and possession of such guardian; where it appears that the defendant as a common pleas judge appointed such guardian and retained the case in his court until such guardian had paid the defendant a considerable sum of money, on an alleged claim for legal services rendered by the defendant for the ward before the defendant became common pleas judge; where it appears that the defendant had no book account against the ward, and that at no time made a claim that he had a book ac-

count against the ward, and where the proof establishes the fact
that at the time of the payment of the money by the guardian to
the defendant that whatever claim, if any, the defendant had
against the ward was then barred by the statute of limitations,
and where there was very convincing evidence tending to prove
that the defendant had been paid for his services rendered the
ward, or at least that the defendant was indebted to the ward on
notes for money borrowed of the ward;

where it further appears that the alleged claim for services were for
services performed by the defendant at different times extending
back over a period of twenty-five or thirty years previous to the
time of the defendant going on the common pleas bench as judge,
the payment by the guardian to the defendant having been made
during the latter part of the second term of the defendant as
judge, the defendant having during said period of twenty-five or
thirty years had two law partnerships, the last partner, S, having
died in 1903, the ward having died in 1907;

and where at the trial of the defendant so charged with aiding and abet-
ing the guardian in the embezzlement of said funds, the question
of fact arising whether or not the defendant had a *bona fide* claim
against the ward, or honestly and in good faith thought he had;

and the defendant offered as a witness, the administrator of the estate
of S who, if he had been permitted, would have testified in sub-
stance: "that in 1903, he inquired of the ward, if he owed the
estate of S, and that the ward replied, 'that he did not, but that
he did owe the defendant.'"

*Held:* Said declaration was properly rejected, for the reason that the
same does not fall within all the prerequisites of the rule.

*George Frey,* Prosecuting Attorney, *C. H. Workman, N. M.
Wolfe, W. J. Weirick* and *N. H. McClure,* for the State.

*J. P. Seward, William M. Koons, C. P. Winbigler* and *Frank
Heath,* contra.

WASHBURN, J.

In 1904, a man by the name of Shelley was appointed guard-
ian of Paul Oliver, who was then an old man. The appointment
was made by the defendant, R. M. Campbell, who was then a
common pleas judge in Ashland county, and the case was re-
tained in his court until Shelley, as guardian, had paid the de-
fendant, Campbell, a considerable sum of money on an alleged
claim for legal services rendered by Campbell for Paul Oliver
before Campbell became judge.

The state claimed that Campbell had no valid, legal or even equitable claim against Paul Oliver, and that Shelley, knowing that fact, conspired with Campbell to defraud the estate of Paul Oliver by the payment of said pretended claim.

Shelley was indicted for embezzlement, and Campbell for aiding and abetting Shelley in such embezzlement. At the trial of Campbell an important question of fact in the case was whether or not Campbell had a *bona fide* claim against Paul Oliver, or honestly and in good faith thought he had. The proof established the fact that Campbell performed legal services for Paul Oliver at different times extending over a period of twenty or thirty years previous to his going upon the bench. During that time Campbell had two different partners, one partnership ending in 1892, I believe, and one in 1899, when he went upon the bench.

No book account was presented by Campbell and no claim was made that he ever had a book account against Oliver, and the proof establishes the fact that at the time of the payment of the money by Shelley to Campbell whatever claim, if any, Campbell had against Oliver was then outlawed; and there was very convincing evidence tending to prove that Campbell had been paid for the services he had rendered Paul Oliver, or at least that Campbell was then indebted to Paul Oliver on notes for money borrowed of Paul Oliver.

Campbell's last partner's name was Semple, and he died in 1903. Paul Oliver died in 1907. At the trial of Campbell in 1911 he offered as a witness the administrator of Semple's estate, who, if he had been permitted, would have testified in substance that in 1903 he inquired of Paul Oliver if he owed the Semple estate, and that Paul Oliver replied that he did not, but that he did owe R. M. Campbell. It is claimed that the rejection of that evidence was prejudicial error. If admissible, it was as a declaration of Paul Oliver against his pecuniary interest.

This rule of evidence received exhaustive consideration by a very able judge in 1864, his opinion being found reported in 16 Iowa Reports, page 81.

After a very careful consideration of all the authorities the court reached this conclusion:

"Verbal declarations are received in evidence in an action between third parties, when accompanied by the following perquisites: 1. The declarant must be dead; 2. The declaration must have been against the pecuniary interest of the declarant at the time it was made; 3. The declaration must be of a fact in relation to a matter concerning which the declarant was immediately and personally cognizable; and 4. The court should be satisfied that the declarant had no probable motive to falsify the fact declared."

That the interest should have a truth-telling influence upon the declarant, it is generally conceded that the interest injured or burden imposed by the facts stated should be one so palpable and positive that it would naturally have been present in the declarant's mind.

At the time it is claimed this declaration was made, Campbell's claim, if any he had, was not enforceable in law, and Oliver's declaration would not affect that fact; in a legal sense it could not make any pecuniary difference to him whether he admitted or denied the claim.

The declaration offered was concerning the result of transactions and mutual dealings over a long period of time, twenty-five years anyhow, according to defendant's evidence, and the transaction was more than six years back. In the light of the evidence at the trial showing Paul Oliver's dealings with the defendant, Campbell, and Oliver's circumstances and surroundings, it is very apparent that the declaration of Oliver could not have been more than a mere guess, and that the interest injured by the facts was not so palpable and positive that it would naturally have been present in his mind.

Again, the rule governing the admissibility of such evidence, if it be applicable to a criminal case, requires that the declaration as a whole should be against the pecuniary interest of the declarant. If a declaration, although in part against declarant's interest, was when made obviously beneficial to him to a still greater extent, and such a declaration is offered as a whole, it should be rejected, for then the grounds upon which such evidence is received is wanting. In such case the declaration would not be against the declarant's real interest and it could not be

said, therefore, that there was an "extreme improbability of its falsehood." The foundation of the rule is that the declaration is against the real interest of the declarant. This is what makes for its truth, and without that circumstance in a given case it would be unsafe and dangerous to apply the rule. The fact that the circumstances show an apparent motive to misrepresent, while it may not be conclusive, should have due consideration in determining whether or not the declaration is really against the interest of the declarant. The question is to be determined by the court when the evidence is offered and each case must be determined in the light of its peculiar facts and circumstances

"It seems not to be sufficient, that, in one or more points of view a declaration may be against interest, if it appears, upon the whole, that the interest of the declarant would be rather promoted than impaired by the declaration." *1 Greenleaf on Evidence*, Section 149.

In the transaction in which the declaration was made in the case at bar the real interest and apparent object of Oliver was to avoid liability to Semple's administrator, and the declaration as to Campbell was a mere incident, an obvious excuse; the circumstances indicate an apparent motive to misrepresent, and the declaration as offered was not, as a whole, clearly against the interest of the declarant. If this construction seems technical, a careful reading of the cases will disclose the fact that the better reasoning requires the rejection of such evidence unless it comes clearly within all the conditions requisite for its reception under the rule.

On this subject, Judge Dillon, speaking for the court in the Iowa case hereinbefore referred to, says:

"Our examination and survey of this subject may be thus summed up. This species of evidence being somewhat anomalous in its character, and standing on the *ullimat thule* of competent testimony, is not highly favored by the courts, and the tendency is rather to restrict than to enlarge the right to receive it, or at least to require the evidence to be brought clearly within all the conditions requisite for its reception."

The St. Louis Court of Appeals, in 73 Southwestern, condemns the character of this testimony and says:

"It is of limited probative force, and has been pronounced by eminent authorities dangerous and most unreliable of all evidence, and should be received with great caution and is only tolerated rather than favored by the courts."

See also 86 Southwestern, 200, and authorities therein cited.

While the rule is established in civil cases in many states, there is no reported case in Ohio where it has been applied, and in the one reported Supreme Court case in Ohio where it was sought to apply the rule its application was rejected on a technicality (10 O. S., 418). Furthermore, its application to a criminal case has not been established in any reported case in the United States, so far as the attorneys and this court have been able to ascertain from a thorough and extended search (*Rice on Criminal Evidence,* Section 87; 50 Federal Reporter, 413).

In the only reported case in the United States where its application was attempted in a criminal case, so far as I have been able to ascertain, it was rejected. 14 Gray (Mass.), 395.

That case, except in one particular, that of the time of the declaration, is exactly like the case at bar. It is true that the rule has been contended for in a large number of criminal cases where the interest of the declarant was not pecuniary, but the declaration was claimed to be against his interest because it might subject the declarant to a successful criminal prosecution. In practically all such cases the rule has been rejected. No good reason is given for a difference between pecuniary interest and fear of criminal prosecution. Surely the latter would furnish a much stronger motive against falsehood than the former. Hence, there is a strong suspicion that the real reason for these decisions is to be found in the unwillingness of the courts to apply the rule in criminal cases. Certainly these cases establish the fact that courts are unwilling to apply the rule in criminal cases to evidence which is not clearly within the terms of the rule.

If the declaration of a deceased person which might have subjected him to a successful criminal prosecution is not admissible in favor of the defendant being tried for the offense concerning which the declaration was made, then for a much stronger reason the declaration of a deceased person which was against his pecuniary interest should not be admitted in a criminal case.

My judgment is that the rule contended for should not be extended or enlarged or applied to cases other than those required by the reported decisions, and feeling that the evidence offered is not clearly within all the conditions required by the rule, I am unwilling to grant a new trial, for the rejection of the same, in a case where the finding of the jury is so clearly sustained by the evidence. The motion for a new trial will, therefore, be overruled. The defendant may stand up.

Considering the fact that as a result of those transactions your property has been taken away from you, that you have been disbarred and disgraced, considering also your health and age of 73 years and that the jury that found you guilty recommend mercy, I am inclined to make your sentence just as light as is compatible with the public welfare which requires me to consider also your position and standing, and consequent obligation and duty as a citizen. It is the judgment of the law and the sentence of the court that you be taken to the jail of the county and thence within five days to the penitentiary of the state of Ohio and there be confined at hard labor without solitary confinement, for a period of two years.

---

## DIVORCE MAY BE GRANTED TO A NON-RESIDENT DEFENDANT.